IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

MISSOULA DIVISION

| | |
|---|---|
| ATLANTIC CASUALTY INSURANCE COMPANY, | CV 12-14-M-DWM |
| Plaintiff, | |
| vs. | ORDER |
| GTL, INC., JOHN P. GREYTAK, and TANGLEWOOD INVESTORS LIMITED PARTNERSHIP, | |
| Defendants. | |

This is a declaratory judgment action. Atlantic Casualty Insurance Company (Atlantic Casualty) issued GTL, Inc. (GTL) a commercial general liability insurance policy. It now seeks a declaration under that policy that it has no duty to indemnify, defend, or cover claims asserted by John P. Greytak (Greytak) and Tanglewood Investors Limited Partnership (Tanglewood) against GTL in an underlying lawsuit proceeding in Montana's Third Judicial District. (*See* doc. 1.)

1

Atlantic Casualty's motion as to its claim for declaratory relief is well taken for the reasons set forth below.  Atlantic's motion for summary judgment is granted. (Doc. 31.) Defendants' motion is denied. (Doc. 35.)

Defendants moved to strike affidavits supporting Atlantic Casualty's motion for summary judgment. (Docs. 38, 66.) These motions are denied. Defendants motion in limine to exclude Plaintiff's expert witnesses is also pending. (Doc. 27.) This motion is denied as moot.

## BACKGROUND

In December 2008, GTL purchased a Commercial General Liability Policy from Atlantic Casualty, effective December 29, 2008 to December 29, 2009. (Doc. 34-10.)

In July 2009, GTL contracted with Tanglewood and Greytak to improve real property in Granite County. (Doc. 01-02 at 2.) Work included construction of a road. (Id.) Greytak and Tanglewood did not tender payment, and on March 16, 2010, GTL filed the underlying lawsuit to foreclose its construction lien. (Id.) Greytak and Tanglewood hired a lawyer and sent a demand letter to GTL on April 30, 2010, contesting the lien and alleging material construction defects. (Doc. 34-

2

01.) On November 5, 2010, Tanglewood and Greytak pled the claims from their April 30 demand as counterclaims in the underlying lawsuit.[1]

Atlantic Casualty was not party to the state lawsuit. (Doc. 31 at 3.) That case was settled on April 13, 2011. (Doc. 34-04.) Atlantic Casualty was first notified of the claims in the underlying lawsuit on May 23, 2011. (Doc. 34-05 at 1.) Once provided with notice, Atlantic Casualty hired an adjuster to investigate Defendants' allegations and claims. (Id.)

While Atlantic Casualty was investigating the counterclaims, Tanglewood and Greytak moved for entry of judgment in the state suit, pursuant to the settlement agreement. (Doc. 34-09.) Judgment was entered on June 21, 2012 and Atlantic Casualty then moved to intervene and set aside the judgment August 6, 2012. *GTL, Inc. v. Greytak, et al.*, Mont. Dist. Cause No. DV-10-3, Doc. 43. Judge Dayton granted Atlantic Casualty's motion to intervene and he set aside the

---

[1] Defendants' counterclaims in the underlying lawsuit include breach of contract, negligence, negligent misrepresentation, fraud, constructive fraud, breach of the implied covenant of good faith and fair dealing, slander of title, and a Montana Consumer Protection Act Violation. (Doc. 03-01.) Tanglewood and Greytak argue GTL's construction of the road did not follow the agreed route and used unsuitable raw materials. (Id. at 7.) They also detail specific construction defects including unbermed corners, incorrect slopes, and insufficient drainage. (Id.)

judgment September 18, 2012. *Id*, doc. 50. Pursuant to stipulation of the parties, Judge Dayton vacated a hearing regarding a stay of the proceedings and ordered the lawsuit stayed September 28, 2012. *Id*, doc. 55.

A central issue in this case is the sufficiency of notice given to Atlantic Casualty by its insured, GTL. The carrier claims notice of Greytak and Tanglewood's claims brought against GTL was insufficient and, as a result, there is no policy coverage for Greytak and Tanglewood's claims.

This declaratory judgment action was filed on January 23, 2012. (Doc. 1.) Tanglewood and Greytak answered and counterclaimed. (Doc. 19.) GTL was served as a party to the case but did not appear. (Doc. 23.) Default was entered against GTL July 9, 2012. (Doc. 24.) In August 2012, the parties filed cross-motions for summary judgment. (Docs. 31, 35.)

Atlantic Casualty unsuccessfully sought cooperation of GTL's representative and counsel for production of files related to the counterclaims. (Doc. 34 at 5.) On October 17, 2012, the protective order sought by GTL's counsel asserting attorney-client privilege in response to a subpoena by Defendants was denied. (Doc. 74.)

4

SUMMARY JUDGMENT STANDARD

A party is entitled to summary judgment if it can show "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is warranted where the evidence produced by the parties permits only one conclusion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986). Only disputes over facts that might affect the outcome of the lawsuit preclude entry of summary judgment; factual disputes that are irrelevant or unnecessary to the outcome are not considered. *Id*. at 248.

ANALYSIS

## I.   Entertaining this Declaratory Judgment Action

The Declaratory Judgment Act provides that "any court of the United States, upon the filing of an appropriate pleading, <u>may</u> declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a) (emphasis added). The Act is remedial, not jurisdictional; constitutional and statutory jurisdictional considerations are distinct issues from the decision to grant declaratory judgment as a remedy. *See Government Employees Insurance Co. v. Dizol*, 133 F.3d 1220,

1222-23 (9th Cir. 1998) [hereinafter *Dizol*]. "By the Declaratory Judgment Act, Congress sought to place a remedial arrow in the district court's quiver; it created an opportunity, rather than a duty to grant a new form of relief to qualifying litigants." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995).

In deciding whether to string this remedial arrow, "the *Brillhart* factors remain the philosophic touchstone for the district court." *Dizol*, 133 F.3d at 1225. The *Brillhart-Wilton* analysis inquires as to the adequacy of parallel state court proceedings to adjudicate of the controversy also at issue in a declaratory judgment action before a federal district court. *See Wilton*, 515 U.S. at 282-83. *Brillhart*'s holding rests on three considerations: federalism and comity, fairness, and judicial economy. *See Chamberlain v. Allstate Ins. Co.*, 931 F.2d 1361, 1367 (9th Cir. 1991). The calculations underlying the principle in *Brillhart* are not exhaustive, however. *Dizol*, 133 F.3d at 1225 n. 5. Other considerations may be relevant to the analysis, like the general policy of avoiding piecemeal litigation and giving effect to the federal removal statute. *Continental Casualty Co. v. Robsac Industries*, 947 F.2d 1367, 1373 (9th Cir. 1991) (overruled on other grounds in *Dizol*) [hereinafter *Robsac*]. Application of these factors here counsels

6

in favor of deciding this declaratory judgment action.

The procedural posture of this particular action is the most significant consideration for keeping the case in federal court. While there is generally no presumption in favor of abstention, *Dizol*, 133 F.3d at 1225, "[g]ratuitous interference with the orderly and comprehensive disposition of a state court litigation should be avoided." *Brillhart*, 316 U.S. at 495. If a declaratory judgment case in federal court is reactive, i.e., it is filed after institution of state proceedings involving the same issues and the same parties, then a presumption arises in favor of abstention. *Chamberlain*, 931 F.2d at 1366-67.

This declaratory action comes on the heels of a state lawsuit based on the same subject. However, the configuration of the parties here differs in important respects from the state lawsuit. Atlantic Casualty was not an original party to the state lawsuit. And GTL, the insured plaintiff in the underlying lawsuit, defaulted in this case. (Doc. 24.) These differences skew the parallelism of the two proceedings, disturbing a condition predicate to the presumption in favor of abstention.

The imperfect parallelism between the underlying litigation and the

declaratory action in this case also affects application of the *Brillhart-Wilton* factors. While notions of federalism and comity are of special importance in areas traditionally governed by state administrative structures, like insurance regulation, *Dizol*, 133 F.3d at 1225, where a state court proceeding is inadequate to satisfactorily adjudicate the rights of all parties these concerns must yield to considerations of justice, practicality, and sound administration which motivate the other *Brillart-Wilton* factors, *see Brillhart* 316 U.S. at 495.

Here, the interest of avoiding prejudice counsels in favor of entertaining Plaintiff's declaratory judgment action. In the state case Atlantic Casualty's interests were not represented until their intervention in the case. If this declaratory action were stayed or dismissed, lacking complete diversity of citizenship among the parties, Plaintiff's only recourse would be in the state forum selected by their insured for adjudication of the underlying dispute. This outcome would bind Atlantic Casualty to the forum selected by its insured despite the fact that the insured failed to appear in this declaratory action and, after settlement, the interests of both plaintiff and defendant in the underlying lawsuit are now aligned against Atlantic Casualty. Furthermore there is no risk of gratuitous interference

with the orderly and comprehensive disposition in the state case as Judge Dayton
vacated the state hearing and stayed that case based on the stipulation of the
parties.

Keeping the case and entering judgment on the merits serves the interest of
judicial economy. The parties have exhaustively briefed the central legal questions
of this matter. The Court heard argument on their motions for summary judgment.
A decision on the claims presented is appropriate at this time and in this forum,
rather than forcing the parties to return to a state court proceeding where Atlantic
Casualty appears only as an intervenor.

## II.    Sufficiency of Notice

The sufficiency of GTL's notice to Atlantic Casualty of the claims brought
against it by Greytak and Tanglewood is the dispositive substantive issue in this
case. Atlantic Casualty has no duty to defend or indemnify GTL for claims
asserted by Greytak and Tanglewood because GTL's notice was untimely and
Greytak and Tanglewood's claims are therefore not covered.

### A.    The Policy Notice Provisions

The Commercial General Liability Policy provided by Atlantic Casualty to

9

GTL requires the insured provide notice to the insurer as soon as practicable in the event of an occurrence, offense, claim, or suit. (Doc. 34-10 at 23.) Whether an event constitutes an occurrence, offense, claim, or suit and when notice must be provided are the foundational questions in determining whether this notice condition is met, and answering whether a defense or indemnity is proper.

### 1.   What Constitutes an Occurrence, Offense, Claim, or Suit?

The policy at issue here is a contract between Atlantic Casualty and GTL. The plain language of a contract is applied unless the contractual language is ambiguous. *Anaconda Pub. Schs., Bd. of Trustees of Anaconda Sch. Dist. No. 10 v. Whealon*, 268 P.3d 1258, 1262 (Mont. 2012). "Whether an ambiguity exists in a contract is a question of law." *Id*. (quoting *Mary J. Baker Revocable Trust v. Cenex Harvest Sts., Coops., Inc.*, 164 P.3d 851, 857 (Mont. 2007)). "An ambiguity exists where the language of a contract, as a whole, reasonably is subject to two different interpretations." *Id*. (quoting *Wurl v. Polson Sch. Dist. No. 23*, 127 P.3d 436, 442 (Mont. 2006)).

The language of the policy is clear and uncontroverted as recognized in the parties' arguments and briefs. The policy defines "occurrence" as "an accident,

10

including continuous or repeated exposure to substantially the same general harmful conditions." (Doc. 34-10 at 27.) The policy defines "suit" as "a civil proceeding in which damages . . . to which this insurance applies are alleged." (Id.)

"Claim" and "offense" are not defined by the policy, but their plain meaning in the context of an insurance contract is easy to discern. Where a term is not defined by the insurance contract, its meaning is construed as a reasonable person in the position of an insured would understand the term. *See Infinity Ins. Co. v. Dodson*, 14 P.3d 487, 493 (Mont. 2000). In the context of this insurance contract, a reasonable person in the position of an insured would understand the term "claim" to mean "a demand for compensation, benefits, or payment." Webster's Third New International Dictionary, 414 (1986). Similarly, a reasonable person in the position of an insured could not help but understand the term "offense" to mean "a breach of moral or social conduct." *Id* at 1566. The meaning of these terms is especially clear in the context of the notice condition to which they are applicable. (*See* doc. 34-10 at 23.) Neither party challenges the meaning of these terms in their arguments regarding construction of the notice condition.

11

### 2.     When Must Notice be Provided?

The policy requires the insured to provide notice of an occurrence, offense, claim, or suit to Atlantic Casualty "as soon as practicable." (Doc. 34-10 at 23.) An identical notice condition was considered by the Montana Supreme Court in *Steadle v. Colony Insurance Company*. 260 P.3d 145, 149-50 (Mont. 2011). The Court found the provision to be "simple, clear, unambiguous and easy to understand." *Id*. It is intended to allow the insurer "opportunity to defend its interests and to prevent or mitigate adverse judgments." *Id* at 150. The Court further explained a notice requirement in an insurance contract is a condition precedent to coverage, which bars recovery under the policy unless it is met or waived. *Id*.

### C.     Notice of the Greytak and Tanglewood Claims

"The scope of an insurer's duty to defend its insured, and of the coverage of the policy in general, is determined by the language of the insurance policy." *Id*. (citing *Grimsrud v. Hagel*, 119 P.3d 47, 53 (Mont. 2005)). If, based on the facts of the complaint, there is no coverage pursuant to the terms of the policy, there is no duty to defend. *Id*.

The insured, GTL, first received notice of the pendency of a claim against it on April 30, 2010, when Greytak and Tanglewood dispatched a written demand to its counsel. (Doc. 34-01) This written demand asserted claims calling for compensation for faults in construction of the road as agreed upon in the July 2009 contract. (Id.) Furthermore, the demand raised the possibility of a civil suit for damages. (Id.) The plain language of the demand letter, as would be understood by a reasonable person in the position of an insured, presents a "claim". Furthermore, the demand letter raises the possibility of a "suit" pursuant to the policy's definition of that term. Therefore, the April 30, 2010 demand letter triggered the policy notice condition.

Greytak and Tanglewood set forth the claims contained in the April 30, 2010 demand letter as counterclaims in the state case on November 5, 2010. (Doc. 30-03.) This event definitively constitutes a "suit" pursuant to the terms of the policy, as it is a civil proceeding in which damages to which the policy may apply are alleged. Accordingly, the November 5, 2010 counterclaims could also be considered an event which triggered the policy notice condition.

GTL did not notify Atlantic Casualty as soon as practicable after these

13

triggering events. Atlantic Casualty first heard about the claims and the underlying lawsuit from a letter GTL mailed to it on May 23, 2011. (Doc. 34-05.) This notice came over a year after the first triggering event, the Greytak and Tanglewood demand letter, and over six months after the second triggering event, the filing of the counterclaims in the underlying lawsuit. These facts are not in dispute.

In *Steadle*, where an identical notice condition was at issue, a five month delay between filing of the claims in the underlying litigation and eventual notice to the insurer was deficient. This case involves a more problematic failure to notify, with a longer period of time passing between both the insured's awareness of the claim and the instigation of litigation over those claims and their eventual notice to the insurer. Accordingly, the notice provided by GTL to Atlantic Casualty in May 2011 was deficient, failing to satisfy the notice requirements of the policy. Because a notice requirement is a condition precedent to coverage, an insured's failure to comply bars recovery under the policy. *Steadle*, 260 P.3d at 150. This bar includes injured third-party claimants. *Id*. Because of this, Atlantic Casualty has no duty to defend or indemnify GTL for claims asserted by Greytak and Tanglewood in that GTL's notice was untimely. Greytak and Tanglewood's

14

claims are not covered.

Greytak and Tanglewood argue Atlantic Casualty must show it suffered prejudice as a result of the deficient notice. They rely on an unreported case, *XL Specialty Insurance Co. v. Patrol Helicopters, Inc.*, Not Reported in F. Supp. 2d, 2009 WL 4929261 (D. Mont. 2009), in support of this proposition. The holding in *XL Specialty Insurance Co.* Was decided before the Montana Supreme Court's decision in *Steadle*. Furthermore, the holding in *XL Specialty Insurance Co.* is predicated on Montana Supreme Court authority applying a prejudice rule to uninsured and underinsured motorist coverage claims because of the public policy motivations for those types of coverage. *Id* at *10. The more recent and pertinent binding authority is contrary to the argument and authority of Defendants' prejudice claims, which are without merit.

Since Atlantic Casualty is entitled to summary judgment because of GTL's untimely notice, it is unnecessary to address alternative theories for summary judgment.

## III.   Greytak and Tanglewood's Motions to Strike

Greytak and Tanglewood move to strike affidavits Atlantic Casualty offers

15

in support of its motion for summary judgment. Their arguments are unpersuasive. They are denied for purposes of the disposition of Atlantic Casualty's motion for summary judgment.

Greytak and Tanglewood claim the affidavit of Francis Nugent, (doc. 34-05), which Plaintiff cites for the proposition that notice of the underlying claims was not provided to Atlantic Casualty until May 2011, is defective in several respects. Defendants argue the affidavit does not meet the personal knowledge requirement of Fed. R. Civ. P. 56(c)(4). They also argue the Nugent affidavit relates inadmissible hearsay evidence. On these grounds, Defendants move to strike portions of the Nugent affidavit. (Doc. 38.)

The facts presented in the Nugent affidavit are based on her personal knowledge and are therefore admissible under the Federal Rules. Nugent's position as a Litigation Examiner providing claims adjusting for Atlantic Casualty is sufficient grounds to infer personal knowledge because of her position within her company. *See In re Kaypro*, 218 F.3d 1070, 1075 (9th Cir. 2000). The foundation for Ms. Nugent's testimony is adequate. She stated she knows the facts presented in her affidavit to be true. Her position places her in direct responsibility

for handling complex claims involving coverage, liability, and damages issues. She has been employed in this capacity for over five years and was the primary adjuster for Atlantic Casualty for the Greytak and Tanglewood claims in the state case. Her personal knowledge as to the contents of her affidavit can be inferred from her position in the company and the foundational statements in her affidavit.

The claims in the Nugent affidavit attacked as hearsay relate to Defendants' degree of cooperation with Atlantic Casualty's investigation of the claims asserted in the underlying lawsuit. Resolution of this challenge is not required to reach the conclusion that GTL provided inadequate notice to Atlantic Casualty of the claims and suit in the underlying matter. In this regard, Defendants' motion to strike is set aside as moot and does not need to be addressed on its merits.

Defendants move to strike additional affidavits offered by Atlantic Casualty in support of their alternative arguments for summary judgment. (Doc. 66.) These motions to strike are moot, as the other affidavits support alternative arguments for summary judgment not adjudicated in this decision. GTL's deficient notice, standing alone, is sufficient grounds to enter summary judgment for Plaintiffs.

**IV.    Greytak and Tanglewood's Motion to Exclude Atlantic Casualty's Expert Witness**

Greytak and Tanglewood also move to exclude expert witnesses disclosed by Atlantic Casualty. (Doc. 27.) These witnesses do not offer evidence needed to resolve Atlantic Casualty's motion for summary judgment. As a consequence, resolution of the Defendants' motion is unnecessary to disposition of the summary judgment motion so the motion is denied as moot.

CONCLUSION

The parties have thoroughly briefed the issues in this case. GTL is not entitled to coverage from Atlantic Casualty because it failed to provide timely notice to Atlantic Casualty of Greytak and Tanglewood's claims.

IT IS ORDERED Atlantic Casualty's motion for summary judgment (doc. 31) is GRANTED as to its claim for declaratory relief. Atlantic Casualty has no duty to defend or indemnify GTL for claims asserted by Greytak and Tanglewood in the underlying lawsuit or pursuant to the putative settlement of that matter.

IT IS FURTHER ORDERED Defendants' motion for summary judgment (doc. 35) is DENIED.

18

IT IS FURTHER ORDERED Defendants' first motion to strike (doc. 38) is DENIED.

IT IS FURTHER ORDERED Defendants' second motion to strike (doc. 66) is DENIED AS MOOT.

IT IS FURTHER ORDERED Defendants' motion in limine to exclude Plaintiff's expert witnesses (doc. 27) is DENIED AS MOOT.

IT IS FURTHER ORDERED the Clerk of Court shall enter judgment in favor of Atlantic Casualty and close this case.

DATED this 14th day of January, 2013.

_____
DONALD W. MOLLOY, DISTRICT JUDGE
UNITED STATES DISTRICT COURT